# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | **8:25CR164** |
| **Plaintiff,** | |
| **vs.** | **FINDINGS AND RECOMMENDATION** |
| **THOMAS J. FUDGE,** | |
| **Defendant.** | |

This matter comes before the Court on the Motion to Suppress, Request for Evidentiary and Oral Argument (Filing No. 18) filed by Defendant, Thomas J. Fudge.  Defendant filed a brief (Filing No. 20) in support of the motion and the Government filed a brief in opposition (Filing No. 32).

The Court held an evidentiary hearing on the motion on November 13, 2025.  Defendant was present with his attorney, Assistant Federal Public Defender, Michael J. Hansen. The Government was represented by Assistant United States Attorney, Matt E. Lierman.  The Court received into evidence, without objection, the Government's Exhibits 1-3 and Defendant's Exhibit 101.  Two Omaha Police Department officers, Joseph Koenig ("Officer Koenig") and Cole Johannsen ("Detective Johannsen"), testified at the hearing on behalf of the Government.  Cozetta Fudge, Defendant's mother, testified on his behalf.  A transcript (TR.) of the hearing was prepared and filed on December 10, 2025.  (Filing No. 42).  The matter is now fully submitted to the Court. For the following reasons, the undersigned magistrate judge will recommend that the motion be denied.

## BACKGROUND

On May 12, 2025, Detective Johannsen[1] was working in his capacity with the Gang Intelligence Unit of the Omaha Police Department when he received information from an ATF Task Force Officer, Detective Adam Cruz, about an ongoing investigation into Defendant for distributing marijuana.  Detective Cruz indicated Defendant was "usually in possession of larger

---

[1] Detective Johannsen has been a police officer for the City of Omaha for over 13 years, and had been working with the FBI's Greater Omaha Safe Streets Task Force for just over a year.  Prior to his employment in Omaha, Detective Johannsen worked as a law enforcement officer in Iowa for two years. (TR. 27-28).

amounts of marijuana," and that a confidential informant had purchased eight ounces of marijuana from Defendant during a controlled buy in front of a residence at 4672 Nebraska Avenue in Omaha, Nebraska the prior year, on July 19, 2024.  Based on this information, Detective Johannsen decided to conduct a follow-up investigation into Defendant.  (TR. 8, 29-31).

Detective Johannsen looked up Defendant's criminal history and learned he had past felony convictions, including robbery and use of a firearm.  (TR. 39, 56-57).  Detective Johannsen also drove in an unmarked cruiser by the residence at 4672 Nebraska Avenue, which is in a residential neighborhood.  Detective Johannsen noted Defendant had a Dodge Durango SUV parked on the street outside the residence.  (TR. 31-32, 38, Ex. 1).  Defendant's mother, Cozetta Fudge, testified she lives at 4672 Nebraska Avenue, and that Defendant had come over to help her unload groceries.  (TR. 71).

Detective Johannsen and Sergeant Gutierrez then conducted surveillance of the Durango from approximately half a block away, observing an individual, Defendant, sitting in the vehicle "for an extended period of time."  (TR. 32-33, 59).  Although Detective Johannsen could not see what Defendant was doing in the Durango, he believed it was possible Defendant was smoking marijuana because in his training and experience, "most dealers of marijuana are also users of marijuana[.]"  (TR. 34, 36).

After observing Defendant sitting in the Durango for twenty to thirty minutes, at approximately 3:20 p.m., Detective Johannsen called Officer Koenig,[2] who was working uniform patrol for the Omaha Police Department, and asked him to do a drive-by to "check[] out" the individual outside the residence at 4672 Nebraska Avenue to see if he could smell marijuana.  (TR. 12-13, 22, 32, 34, 36).  Detective Johannsen testified it is "not uncommon" for marked patrol cruisers to be driving in the area, which is considered a "high-crime" area, and asked Officer Koenig to conduct the drive by so that Detective Johannsen could maintain his surveillance position in his unmarked cruiser half a block away.  (TR. 32-33, 39).

Officer Koenig drove his marked patrol car to the residential area within five to ten minutes after receiving Detective Johannsen's call.  (TR. 22).  As he drove westbound down Nebraska Avenue, Officer Koenig observed a 30-to-40 year-old black male, Defendant, sitting "slouched" in the driver's seat of the parked black Dodge Durango.  Officer Koenig observed the Durango's driver's door was open.  (TR. 14-16, 22; Ex. 1).  Officer Koenig did not see any other individuals

---

[2] Officer Koenig has been a police officer for the City of Omaha for over 16 years.  (TR. 11).

in or near the Durango, and there were no other vehicles in the area.  Officer Koenig testified that he was driving approximately 10 miles-per-hour with his driver side window rolled down, and when he drove within 10 feet of the Durango he "picked up a very heavy strong odor of burnt marijuana."  Officer Koenig determined the burnt marijuana smell was emanating from the cab of the Durango where Defendant was seated, but did not see Defendant actively smoking or observe smoke emanating from the Durango.  (TR. 16-18, 24).  Officer Koenig testified that through his training and experience, he is familiar with the different odors of burnt and raw marijuana, and has made "hundreds" of traffic stops involving individuals smoking marijuana or carrying raw marijuana within a vehicle or carrying it on their person.  (TR. 19).  Officer Koenig called Detective Johannsen back and relayed his observations of Defendant and that he smelled marijuana coming from the Durango.  (TR. 18-19, 37-38).  Officer Koenig then left the area to respond to another radio call and had no more involvement in this case.  (TR. 21).

After receiving Officer Koenig's call, Detective Johannsen and Sergeant Gutierrez briefly maintained surveillance of Defendant and discussed tactics before making contact with Defendant approximately five minutes later.  (TR. 38, 40).  Detective Johannsen and Sergeant Gutierrez drove their unmarked cruiser to Defendant's location and parked on the street nearby behind another vehicle.  (TR. 39).  Detective Johannsen and Sergeant Gutierrez exited their vehicle and approached Defendant on foot.  (TR. 40-41).  Detective Johannsen was wearing a large tactical vest with prominent police markings and a badge, and was equipped with his firearm.  (TR. 46).  Detective Johannsen observed Defendant's mother on the other side of the road unloading groceries from her vehicle.  (TR. 60).

Detective Johannsen and Sergeant Gutierrez stood on the common sidewalk outside of the residence to speak to Defendant, who was standing near the house approximately ten to fifteen yards away.  Detective Johannsen told Defendant that they had received information from a uniform patrol officer that someone was smoking marijuana in the Durango, that Defendant matched the description of the individual, and asked Defendant if the Durango was his vehicle.  (TR. 41, 62, 66-67).  Defendant confirmed the Durango was his, and stated he was "just smoking."  (TR. 42, 62).  Detective Johannsen took Defendant's statement as an acknowledgement he was smoking marijuana, and asked Defendant to come down and talk to them.  (TR. 42-43, 64).  Defendant walked down from the residence towards Detective Johannsen and Sergeant Gutierrez, who were still standing on the sidewalk.  (TR. 43).  Detective Johannsen testified he smelled

3

marijuana coming from Defendant's person. (TR. 43). Detective Johannsen testified the odor was moderately strong, and there was "no question at all" that the smell of burnt marijuana was emanating from Defendant's person. (TR. 44). Detective Johannsen also is familiar with the odor of tobacco smoke, which is "100 percent" a different odor than burnt marijuana, and testified he did not smell tobacco on Defendant's person or in the Durango. (TR. 67-68).

Detective Johannsen and Gutierrez conducted a pat-down of Defendant's person to check for weapons as "standard procedure." (TR. 45). During the pat-down, Detective Johannsen felt what he believed was the key fob to the Durango, and asked Defendant whether it was. Defendant "pulled away" and the officers placed him in handcuffs. (TR. 45, 63). At this time, Detective Johannsen believed he had probable cause to arrest Defendant for possession of marijuana and to search the vehicle containing marijuana. (TR. 46-47).

Detective Johannsen took the Durango's key fob from Defendant's pocket and proceeded towards the Durango to search it. Detective Johannsen testified the Durango's windows were rolled up and the doors were closed. (TR. 47-48). As Detective Johannsen approached the Durango, Defendant stated there was marijuana inside of a backpack in the back seat. (TR. 48-49). Through the Durango's window, Detective Johannsen also saw marijuana remnants or "shake" scattered in the gearshift area along with a portable ashtray in the cupholder. (TR. 50-52; Ex. 2). When Detective Johannsen opened the Durango's door he immediately smelled the moderate to strong odor of marijuana coming from inside the vehicle. (TR. 52). Detective Johannsen does not recall whether the Durango's doors were locked. (TR. 66). Detective Johannsen, assisted by other gang suppression officers, searched the Durango and located a Glock handgun in the center console and a total of 70 grams of marijuana located in a black backpack in the back seat. (TR. 53-56).

Defendant was advised he was under arrest and was transported to OPD Central Headquarters to be interviewed. (TR. 56). Detective Johannsen advised Defendant of his *Miranda* rights, which Defendant waived and provided a statement acknowledging being in possession of the firearm. (TR. 56-57). The Indictment in this matter charges Defendant with one count of being a felon in knowing possession of a firearm in violation of 18 U.S.C § 922(g)(1). (Filing No. 1).

Defendant has now filed the instant motion seeking suppression of evidence derived from the warrantless search and detention of his person and from the search of his vehicle as violative of the Fourth Amendment. (Filing No. 18). Defendant argues law enforcement had neither

reasonable suspicion nor probable cause to handcuff him, and that there was no justification to seize a noncontraband item—Defendant's key fob—from inside his pocket.  (TR. 75, 83-84).  Defendant contends that at the time Detective Johannsen seized the key fob, there was no probable cause to believe the Durango contained evidence of criminal activity because law enforcement only isolated the smell of burnt marijuana to Defendant's person.  (TR. 75-76, 77-78).  Defendant asserts a Fourth Amendment violation occurred when his key fob was seized, regardless of whether Detective Johannsen actually used the key fob to unlock the Durango to conduct the search.  (TR. 78-79).  Defendant maintains that, to the extent the Government justifies the warrantless search of the Durango as a search incident to arrest, the search was invalid under *Arizona v. Gant*, 556 U.S. 332 (2009).  (Filing No. 20 at p. 5; TR. 82-83).

The Government disagrees with Defendant's view of his encounter with law enforcement.  Instead, the Government contends that when Officer Koenig drove by and observed Defendant sitting inside the Durango while smelling burnt marijuana emanating from the vehicle, Officer Koenig had no obligation to differentiate between whether the odor was "coming from the person or the vehicle any more than a normal traffic stop."  (TR. 79).  The Government also asserts the key fob issue is moot because Detective Johannsen and Sergeant Gutierrez had probable cause to arrest Defendant when they localized the smell of burnt marijuana to Defendant's person, permitting them to seize anything on his person during a search incident to arrest and to continue with the probable cause search of the Durango.  (TR. 80).  The Government further argues that, even if there was any question about whether there was probable cause to search the Durango, Defendant's subsequent voluntary statement that there was marijuana inside a backpack in the Durango clearly supplied probable cause for the search.  (TR. 81).

## ANALYSIS

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV.  A warrantless seizure "is per se unreasonable, unless the police can show that it falls within one of a carefully defined set of exceptions." *United States v. Lewis*, 864 F.3d 937, 943 (8th Cir. 2017) (quoting *Coolidge v. N.H.*, 403 U.S. 443, 474 (1971)).  The Fourth Amendment permits brief investigative stops when law enforcement has reasonable, articulable suspicion that the person stopped is, or is about to be, engaged in criminal activity.  See *United States v. Slater*, 979 F.3d

5

626, 629 (8th Cir. 2020).  In determining whether an officer had reasonable suspicion, courts "look at the totality of the circumstances, allowing officers to draw on their experience and training." *United States v. Lawhorn*, 735 F.3d 817, 820 (8th Cir. 2013) (citation omitted).

Probable cause for a warrantless arrest exists when an officer has reasonably trustworthy information that is sufficient to lead a person of reasonable caution to believe that the suspect has committed or is committing a crime.  See *United States v. Rhodes*, 147 F.4th 905, 907 (8th Cir. 2025) (citing *Brinegar v. United States*, 338 U.S. 160, 175-76 (1949)).  "To determine whether an officer had probable cause to arrest an individual, [a court must] examine the events leading up to the arrest" and analyze whether the facts, "viewed from the standpoint of an objectively reasonable police officer, amount to probable cause." *Maryland v. Pringle*, 540 U.S. 366, 371 (2003) (internal quotations and citation omitted). "In making a probable cause determination, law enforcement officers have substantial latitude in interpreting and drawing from factual circumstances."  *United States v. Winarske*, 715 F.3d 1063, 1067 (8th Cir. 2013) (internal quotations and citation omitted).

After review, the undersigned magistrate judge finds that Defendant's Fourth Amendment rights were not violated during his encounter with law enforcement on May 12, 2025.  Law enforcement officers were conducting a follow-up investigation into Defendant's purported marijuana dealing activities at or near the residence at 4672 Nebraska Avenue.  Detective Johannsen had information that Defendant was a convicted felon, and had sold marijuana to a confidential informant the prior year.  Prior to contacting Defendant, Detective Johannsen drove his unmarked police vehicle past the residence at 4672 Nebraska Avenue, and saw Defendant sitting in the driver's seat of his black Dodge Durango parked on the public street across from the residence.  (TR. 31; Ex. 1).  Detective Johannsen and Sergeant Gutierrez maintained surveillance from approximately half a block away, observing that Defendant continued to sit in his vehicle for an extended period of time—approximately twenty to thirty minutes.  Given Defendant's alleged marijuana dealing, Detective Johannsen suspected that Defendant could be smoking marijuana in his vehicle because in his training and experience, "most dealers of marijuana are also users of marijuana[.]"  (TR. 34, 36).  Detective Johannsen called Officer Koenig to drive by Defendant's location to confirm or dispel his suspicions.

Officer Koenig testified that through his training and experience, he is familiar with the different odors of burnt and raw marijuana and has made "hundreds" of traffic stops involving

6

individuals smoking marijuana or carrying raw marijuana within a vehicle or carrying it on their person.  Officer Koenig testified he drove past Defendant's location at a slow speed with his window rolled down, observed Defendant sitting in the driver's seat of the Durango with the driver door open, and detected the "very heavy strong odor of burnt marijuana" emanating from the cab of the Durango where Defendant was seated.  These observations by law enforcement occurred in the open on a public street prior to making any contact with Defendant, and thus do not implicate the Fourth Amendment.  See *California v. Ciraolo*, 476 U.S. 207, 213 (1986) (stating the Fourth Amendment does "preclude an officer's observations from a public vantage point where he has a right to be[.]").

The undersigned magistrate judge also finds Officer Koenig's testimony credible that he detected the odor of burnt marijuana emanating from the cab of the Durango on his drive by.  This credibility finding is based on the consistency of the officers' testimony and the corroborating evidence.  The officers' testimony established that there were no other vehicles or individuals in the area that could have been the source of the odor of burnt marijuana detected by Officer Koenig.  It is also believable that Officer Koenig could smell the odor of burnt marijuana emanating from the Durango on his drive by given that he was driving in close range at a slow speed with his window rolled down and with the Durango's driver's door open.  Then, when Detective Johannsen later told Defendant they had received information that someone was smoking marijuana in the Durango, Detective Johannsen testified Defendant acknowledged this by replying he was "just smoking."  Detective Johannsen also testified he smelled a "moderately strong" odor of burnt marijuana on Defendant's person, further supporting the assertion that Defendant was just smoking it in his vehicle.  Later, when Detective Johannsen opened the Durango's door, he immediately smelled the moderate to strong odor of marijuana coming from inside the vehicle, and also observed marijuana "shake" and an ashtray in the console area of the vehicle.

Officer Koenig communicated his observation of smelling burnt marijuana emanating from the cab of the Durango to Detective Johannsen.  See *United States v. Rederick*, 65 F.4th 961, 966 (8th Cir. 2023) (discussing that the "collective knowledge of law enforcement officers conducting an investigation" can be imputed to other officers "when there is some communication between the officers.").  The Eighth Circuit has "repeatedly held that the odor of marijuana provides probable cause for a warrantless search of a vehicle under the automobile exception." *United States v. Williams*, 955 F.3d 734, 737-38 (8th Cir. 2020) ("[T]he odor of marijuana provides probable

cause for a warrantless search of a vehicle under the automobile exception"); see also *United States v. Smith*, 789 F.3d 923, 929 (8th Cir. 2015) (finding the "slight odor of marijuana" was "sufficient to establish probable cause to search an automobile and its contents"); *United States v. Peltier*, 217 F.3d 608, 610 (8th Cir. 2000) (concluding the odor of burnt marijuana "gave the deputy probable cause to search [the] truck for drugs"). Thus, Officer Koenig's detection of the odor of burnt marijuana emanating from the Durango alone could supply probable cause for Detective Johannsen's warrantless search of the Durango.

Nevertheless, before Detective Johannsen ever opened the Durango's doors, he had the following additional information supporting probable cause for its warrantless search: the odor of burnt marijuana emanating from Defendant's person; Defendant's acknowledgement he was "just smoking" in response to Detective Johannsen's statement they had received information that someone was smoking marijuana in the Durango; Detective Johannsen's observation through the vehicle's window of marijuana remnants or "shake" scattered in the gearshift area along with a portable ashtray in the cupholder; and finally, Defendant's spontaneous statement that there was marijuana inside of a backpack in the back seat. Given the totality of the circumstances, a reasonable person could believe there was a fair probability that contraband or evidence of a crime would be found in the Durango. *United States v. Beard*, 708 F.3d 1062, 1065 (8th Cir. 2013) ("Probable cause exists when, given the totality of the circumstances, a reasonable person could believe there is a fair probability that contraband or evidence of a crime will be found in a particular place"); see, e.g., *United States v. Wright*, 844 F.3d 759, 763 (8th Cir. 2016) (finding the smell of burnt marijuana and the presence of a marijuana cigar in plain view through a vehicle's window were sufficient to justify a warrantless search for drugs); *United States v. Brown*, 634 F.3d 435, 438 (8th Cir. 2011) (finding probable cause to search vehicle when officers detected marijuana odor from vehicle and passenger admitted to smoking marijuana).

Defendant insists a Fourth Amendment violation occurred when Detective Johannsen seized the key fob from Defendant's pocket during the pat down prior to the vehicle's search. Detective Johannsen testified he knew the object was a key fob and not a weapon or contraband, and therefore Defendant asserts Detective Johnson was not allowed to seize it. See *United States v. Cowan*, 674 F.3d 947, 953 (8th Cir. 2012) ("A police officer 'lawfully pat[ting] down a suspect's outer clothing' may seize any 'object whose contour or mass makes its identity immediately apparent' as incriminating evidence."). However, there is no evidence that the Durango was

locked or that Detective Johannsen used the key fob to open the Durango, or that the key fob was otherwise utilized by law enforcement in this case. Therefore, regardless of whether Detective Johannsen was permitted to seize the key fob, Defendant has not established the nexus between this seizure and the evidence obtained during the search, as the Government is not offering the key fob as evidence and the record does not establish the key fob was used to obtain the evidence Defendant seeks to suppress obtained as a result of that seizure. See *United States v. Tuton*, 893 F.3d 562, 568 (8th Cir. 2018) (explaining that the exclusionary rule extends to evidence "later discovered and found to be derivative of an illegality," but the defendant must "establish[] a nexus between a constitutional violation and the discovery of evidence sought to be excluded"; "[t]he illegality must be at least a but-for cause of obtaining the evidence.").

Nevertheless, the undersigned magistrate judge also finds probable cause existed to arrest Defendant, and thus seizure of the key fob is separately justifiable as a search incident to arrest. Detective Johannsen smelled the odor of burnt marijuana emanating from Defendant's person, and Defendant acknowledged he had been smoking. See, e.g., *United States v. Wright*, 844 F.3d 759, 762-63 (8th Cir. 2016) (noting that, although the defendant suggested "officers unlawfully searched his pockets to obtain a key that they used to unlock the SUV . . . before the key was seized, police had probable cause to arrest [the defendant] based on the odor of marijuana coming from his person . . . and it is permissible to search an arrestee's person incident to an arrest"; the fact that "the search of [the defendant's] person for the key preceded the formal arrest does not make the search unlawful under those circumstances.").

Because Defendant's Fourth Amendment rights were not violated by the search of his person or vehicle, his motion to suppress evidence obtained from the warrantless search should be denied. Upon consideration,

**IT IS HEREBY RECOMMENDED** to Robert F. Rossiter, Jr., Chief United States District Court Judge, that Defendant's Motion to Suppress (Filing No. 18) be denied.

Dated this 9th day of January, 2026.

BY THE COURT:

s/Michael D. Nelson
United States Magistrate Judge

9

## ADMONITION

Pursuant to NECrimR 59.2, any objection to this Findings and Recommendation shall be filed with the Clerk of the Court within fourteen (14) days after being served with a copy of this Findings and Recommendation. Failure to timely object may constitute a waiver of any such objection.  The brief in support of any objection shall be filed at the time of filing such objection. Failure to file a brief in support of any objection may be deemed an abandonment of the objection.